# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

MARGARET BENSON,     )
     )
     PLAINTIFF     )
     )
v.     )     CIVIL NO. 2:16-CV-114-DBH
     )
WAL-MART STORES EAST, L.P.,     )
     )
     DEFENDANT     )

## DECISION AND ORDER ON DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

This is a case asserting disability-based employment discrimination contrary to the Maine Human Rights Act (MHRA), 5 M.R.S.A. § 4572(2). The defendant removed it to this court based upon diversity of citizenship jurisdiction, 28 U.S.C. § 1332. There are two claims: failure to reasonably accommodate, from October 2014 to June 2015, an employee's medical restrictions arising out of an injury in October; and actual discrimination in failing to hire the employee for a different position within the company after the October injury. The defendant Wal-Mart Stores East, L.P. (Wal-Mart) has moved for summary judgment on its employee Margaret Benson's claims. Because it is a summary judgment motion, I take all disputed facts in Benson's favor, and draw all inferences favorable to her. The motion is **GRANTED**.

***Reasonable Accommodation***

Benson worked for Wal-Mart as a Grocery Reclamation/DSD Receiving Associate. It is undisputed that Benson's "positions of Grocery Reclamation Associate (primary job) and DSD Receiving (secondary job) required her to lift up to 25 and 50 pounds, respectively."[1] It is also undisputed that after her injury in October 2014 she could no longer perform these job requirements.[2] Benson has not asserted that these were not essential functions of that job.

Benson claims that for a period of time Wal-Mart failed to reasonably accommodate her medical restrictions that arose out of her October injury. The basis for her claim is that the company treats work-related injuries differently from non-work-related injuries. For an employee with a *work-related* injury, Wal-Mart creates a temporary position in a job category that the injury's limitations permit the employee to perform.[3] For *non-work-related* injuries, however, Wal-Mart refuses to create a temporary position and requires the employee to meet the physical requirements of the position she occupied, or to pursue an accommodation within that position.[4] According to a Wal-Mart co-manager at the store where Benson worked:

> [I]f an associate is injured at work, we do what we can do to accommodate their restrictions, meaning we are able to move them to a job that's not maybe their primary job in order to accommodate them. . . . [But i]f you are injured away from work and you can't perform the essential functions of your

---

[1] Def.'s Statement of Material Facts ¶ 58 (ECF No. 53) (Def.'s SMF); Pl.'s Resp. to Def.'s SMF ¶ 58 (ECF No. 60) (Pl.'s RSMF).

[2] Def.'s SMF ¶¶ 56–59; Pl.'s RSMF ¶¶ 56–59.

[3] Wal-Mart policy provides that an employee who suffers from a work-related injury may be eligible for a temporary alternate duty (TAD), or light duty, position. Def.'s SMF ¶ 8; Pl.'s RSMF ¶ 8.

[4] Def.'s SMF ¶¶ 4–5, 26; Pl.'s RSMF ¶¶ 4–5, 26; John Wayne Gottwald Decl. ¶ 8 (ECF No. 51-1).

> job, you need to go on a leave of absence until you can perform the essential functions of your job because that is your job.

Susan Bradstreet Dep. Tr. 15:9–17 (ECF No. 48-3).

Here, when Wal-Mart first learned of Benson's injury, it believed that the injury was work-related and therefore initially offered Benson a temporary assignment[5] as a people greeter, fitting room attendant, or paper shredder.[6] Benson was willing to accept the offer after taking a three-day hiatus her doctor recommended. When Benson returned to work three days later, however, Wal-Mart withdrew that offer because it had concluded from a new medical examination that Benson's injury was not work-related.[7] (Benson has not argued that the non-work-related classification at that stage was inaccurate or itself discriminatory.) Benson did have the option to "apply for those positions [people greeter; fitting room attendant; paper shredder] as opposed to keeping her current position." Susan Bradstreet Dep. Tr. 16:3–4 (ECF No. 48-3). She did not do so.[8] Wal-Mart gave Benson an unpaid leave of absence. Several

---

[5] The TAD position typically does not exceed 90 days. Def.'s SMF ¶ 10. The plaintiff's response says: "Deny that the position is temporary. Plaintiff remained in the position of 'people greeter' for the rest of her employment." Pl.'s RSMF ¶ 10. That response does not contradict the defendant's statement that "[t]he TAD position duration should normally not exceed 90 days." Def.'s SMF ¶ 10 (citing John Wayne Gottwald Decl., Ex. B at 2 (ECF No. 57-1) ("The TAD position duration should not exceed 90 days.")).

[6] Def.'s SMF ¶ 25; Pl.'s RSMF ¶ 25.

[7] On October 20, 2014, Dr. Jeanne Scheddel of Concentra performed an examination and determined that Benson's injury was not work-related. Def.'s SMF ¶¶ 30–32; Pl.'s RSMF ¶¶ 30–32.

[8] In other words, Benson did not specifically apply for an open position in the category of people greeter, fitting room attendant or paper shredder in place of her job as a Grocery Reclamation/DSD Receiving Associate. See Def.'s SMF ¶¶ 44, 47; Pl.'s RSMF ¶¶ 44, 47; Margaret Benson Dep. Tr. 135:8–13 (ECF No. 49). What she wanted as to those positions was the accommodation Wal-Mart initially offered her in October 2014 when it considered her injury work-related. Pl.'s Opp'n to Def.'s Mot. Summ. J. 2, 10–11, 12 (ECF No. 62). As her legal memorandum recognizes, that offer was for a "temporary position," id. at 10 (quoting the written

months later after another medical examination, however, Wal-Mart concluded that Benson's injury was in fact work-related. Then it gave her workers' compensation benefits and revived its October offer of a TAD position. Benson returned to work in the TAD position as a people-greeter in June 2015, but with the benefits due a grocery reclamation associate, along with a pay raise.[9] In the interim, she had been on unpaid leave from October 2014 to June 2015, which is the subject of her discrimination claim for failure to accommodate. She again went out on leave in the spring of 2016 when her injury prevented her from doing the job of people greeter. Margaret Benson Dep. Tr. 155:1–3 (ECF No. 49). Apparently she left the company altogether in February 2017. Pl.'s Opp'n to Def.'s Mot. Summ. J. 8 (ECF No. 62).

Benson argues that Wal-Mart's treatment of employees with work-related injuries shows that letting her perform the duties of one of the three positions (people greeter, fitting room attendant, paper shredder) from October 2014 to June 2015 was a reasonable accommodation that would have caused no undue hardship to Wal-Mart, and therefore that Wal-Mart's failure to do so during that period violated the reasonable accommodation requirement of Maine's disability discrimination law. See 5 M.R.S.A. §§ 4553(2)(E) & (9)(A) (defining reasonable accommodation). But Wal-Mart cites EEOC guidance that permits employers to

---

offer), and Benson testified at her deposition that her eventual return to work was on "temporary assignment duty." Margaret Benson Dep. Tr. 151:16-25, 211:15-17 (ECF No. 49); Pl.'s RSMF ¶ 85 ("Wal-Mart offered the position as a Temporary Assignment Position."). Wal-Mart did create temporary positions in those categories for employees injured on the job, but Benson has not shown that there was an opening in one of those positions aside from that limited willingness to create a temporary new position.

[9] Def.'s SMF ¶¶ 83–86; Pl.'s RSMF ¶¶ 83–86; Sherma Moody Dep. Tr. 43:2–7 (ECF No. 48-6).

create temporary light duty positions for employees injured on the job without requiring the employer to create positions for disabled workers who are disabled from a non-work-related injury.[10]

Soto-Ocasio v. Federal Express Corp., 150 F.3d 14, 18 (1st Cir. 1998), provides guidance on how to assess Benson's reasonable accommodation claim.[11] According to Soto-Ocasio, "[i]t is plaintiff's burden to prove that, at the time she sought to resume her job, she had the ability to perform [its] essential functions."[12] 150 F.3d at 18. Here, Benson has presented no evidence that she had the ability to perform the essential functions of Grocery Reclamation/DSD Receiving Associate. The fact that Wal-Mart creates temporary positions such as people greeter, fitting room attendant, or paper shredder for employees with work-related injuries does not show that Benson has the ability to perform the essential functions of a Grocery Reclamation/DSD Receiving Associate.

---

[10] In its memorandum, Walmart cites EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, No. 915.002 (Oct. 17, 2002), Def.'s Mot. Summ. J. 13–14 (ECF No. 52), but it appears that the proper citation for this EEOC guidance on the creation of light duty positions is: U.S. Equal Emp. Opportunity Comm'n, EEOC Enforcement Guidance: Workers' Compensation and the ADA, No. 915.002, 1996 WL 33161338, ¶ 27 (1996). According to the First Circuit, EEOC interpretive guidance "'while not controlling upon the courts by reason of [its] authority, do[es] constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91,104 n.13 (1st Cir. 2007) (quoting Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 672 (1st Cir.1995)). I do not specifically rely on the EEOC Guidance, but the result I reach under First Circuit cases is consistent with it.

[11] The parties agreed at the Local Rule 56 Conference that Maine's Law Court has not addressed the issues presented in this case and that the Law Court would follow federal caselaw. Report of Pre-Filing Conference 1 (ECF No. 42).

[12] Accord Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 20 (1st Cir. 2004) ("To assert a claim for failure to accommodate under the Rehabilitation Act, Calero would have to establish the following: (1) that she suffered from a 'disability' within the meaning of the statute; (2) that she was a qualified individual in that she was able to perform the essential functions of her job, either with or without a reasonable accommodation; and (3) that, despite her employer's knowledge of her disability, the employer did not offer a reasonable accommodation for the disability.").

In Soto-Ocasio, the First Circuit dealt with a record where the employee had "presented no 'specific, competent evidence' [that she was able to perform her essential job functions]. . . . Instead, she has concentrated on the argument that [her employer] also had an ADA-imposed burden: to be responsive to plaintiff's request for reasonable accommodation," *i.e.*, to engage meaningfully in an interactive process to identify a reasonable accommodation. 150 F.3d at 18–19. The First Circuit ruled that:

> [P]laintiff's assertion that [her employer] failed to engage in "meaningful" interaction with plaintiff regarding reasonable accommodation is of no moment—or, more precisely, it puts the cart well before the horse—because no reasonable trier of fact could have found, on this record, that plaintiff was capable of performing the duties [of her position], with or without reasonable accommodation.

Id. at 19.

That is Benson's situation here. She has not presented evidence of her ability to perform the essential functions of a Grocery Reclamation/DSD Receiving Associate. Although it is a stretch, she does present evidence that, taken in the light most favorable to her, might show that Wal-Mart failed to engage meaningfully in the interactive process over an accommodation, namely the failure by certain members of management to respond to each one of her many emails or phone calls.[13] But aside from Wal-Mart's distinction between work-related and non-work-related injuries, Benson has shown no accommodation that Wal-Mart could have made to the Grocery

---

[13] Pl.'s Statement of Material Facts ¶¶ 46–56 (ECF No. 61) (Pl.'s SMF); Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 46–56 (ECF No. 69) (Def.'s RSMF).

Reclamation/DSD Receiving Associate position Benson actually held so as to make it possible for her to continue in that position. The First Circuit has stated: "To be sure, the term 'reasonable accommodation' may include 'job restructuring [and] part-time or modified work schedules.' However, the ADA does not require an employer 'to reallocate job duties in order to change the essential function of a job.'" Soto-Ocasio, 150 F.3d at 20 (citations omitted); accord Lang v. Wal-Mart Stores East, L.P., 813 F.3d 447, 455–56 (1st Cir. 2016) (reasonable accommodation does not require excusing employee from manual lifting requirement of a position).

Instead, Benson argues that *reassignment* was required to accommodate her injury. Pl.'s Opp'n to Def.'s Mot. Summ. J. 10–11 (ECF No. 62). In particular, she says:

> *Benson's position as a Grocery Reclamation [sic] is not at issue.* The issue is whether Benson could perform the essential functions for the positions of people greeter, fitting room attendant or personnel associate.

Id. at 11 (emphasis added). Benson then argues that "[e]ssential function means the fundamental duties of the employment position the individual with a disability holds *or desires*." Id. (emphasis added). Both the MHRA, 5 M.R.S.A. § 4553(8-D), and the ADA, 42 U.S.C. § 12111(8), do refer to "the essential functions of the employment position that such individual holds or desires," but the "or desires" language covers employees who seek reassignment to a vacant position. See Audette v. Town of Plymouth, No. 15-2457, 2017 WL 2298070, at *6 & n.10 (1st Cir. May 26, 2017) ("[T]he employee must demonstrate that there is an actual vacant position to which she can transfer. 'An employer is not

required by the ADA to create a new job for an employee . . . .'"(citations omitted)). Benson has not shown that any of these positions was in fact vacant, only that Wal-Mart was willing to create a temporary position for workers injured on the job.[14]

I conclude that under the standards of <u>Soto-Ocasio</u>, Wal-Mart is entitled to summary judgment on Benson's claim under the reasonable accommodation requirement.

### Discrimination in Failure to Hire (Count II)

The dispute here is over a "UPC Office" position in the Windham Wal-Mart store that Benson wanted and did not obtain.

When Benson was injured in the fall of 2014, Wal-Mart employed two UPC Office employees at the Windham store. Benson's burden to establish a prima facie case for her failure to obtain one of these positions has four elements. She must show that (1) she is "a member of a protected class;" (2) that she "applied for an open position" with Wal-Mart; (3) that she "was not selected"; and (4) that

---

[14] Benson also refers briefly to a position in the Crafts Department. Pl.'s Opp'n to Def.'s Mot. Summ. J. 7, 12 (ECF No. 62); see also Pl.'s SMF ¶¶ 70–71; Def.'s RSMF ¶¶ 70–71. Benson testified at her deposition that the co-manager of Crafts told her in February 2015 that she "would hire [Benson] with 15-pound restrictions for crafts." Margaret Benson Dep. Tr. 183:23–184:17 (ECF No. 49). In contrast, the co-manager testified that at the time she didn't know what Benson's restrictions were or whether they would meet the job requirements for Crafts and that with Benson's actual restrictions, Benson would not have qualified for the Crafts position. Mandi Cotter Dep. Tr. 9:9–10:24 (ECF No. 59-1). That difference in testimony alone might simply create a dispute for the fact-finder. However, Benson also testified that in the same conversation the co-manager told her that the Crafts position "wouldn't have the hours," Benson Dep Tr. 184:8–9, 199:7–8, that Benson would "have to check with personnel to see what the restrictions were and personnel said no," id. at 199:8–9, and that personnel told Benson "I didn't meet the restrictions," id. at 199:12–13. Benson testified that she never asked the co-manager or personnel to change the restrictions. Id. at 200:7–15. I conclude on this record Benson has not shown that there was an open Crafts position ("wouldn't have the hours") or that she could perform the essential functions of that position.

Wal-Mart "hired another individual with similar qualifications." <u>Clifford v.</u> <u>Barnhart</u>, 449 F.3d 276, 281 (1st Cir. 2006). If she does so, then Wal-Mart must articulate a legitimate, non-discriminatory reason for the failure to hire her. If it does so, then "any presumption of discrimination [is] dispelled, and the burden [is] on [Benson] to generate a material issue that disability discrimination was a determinative factor in the hiring decisions." <u>Id</u>.

With respect to these elements, it is undisputed that (1) Benson was disabled. Contrary to Wal-Mart's assertion, there is evidence that would allow a fact-finder to conclude that (2) Benson applied for the second UPC Office position when it initially became open in September 2015, and (3) was denied.[15] She swore to that in her response to the defendant's Interrogatory 14, ¶ h. Benson Dep. Ex. 8 at 11 (ECF No. 49-1) (Wal-Mart's attorney referred to this assertion during her deposition. Benson Dep. Tr. 201:10–16 (ECF No. 49)). Contrary to Wal-Mart's assertion, there is also evidence that Benson identified the UPC Office position in her career preferences on the Wal-Mart website. Benson Dep. Tr. 180:23–182:3 (ECF No. 49). Wal-Mart contests these assertions, but that creates

---

[15] The record is somewhat unclear as to when Benson claims the failure to hire occurred. The Amended Complaint refers only to January and September 8, 2015. Am. Compl. ¶¶ 15, 24 (ECF No. 9). Wal-Mart's memorandum in support of its motion for summary judgment focuses on September 8, 2015. Def.'s Mot. Summ. J. 2, 16-18 (ECF No. 62). In her response, Benson seems at one point to address September 2015 and the spring of 2016. Pl.'s Opp'n to Def.'s Mot. Summ. J. 8–9 (ECF No. 62) (arguing that Wal-Mart discriminated against Benson by refusing to consider her for the UPC position). But later, in a collective citation of many paragraphs of her Statement of Material Facts, <u>id</u>. at 13 (citing Pl.'s SMF ¶¶ 22, 66–69, 82–95), she includes paragraphs that address the January 2015 time period (¶¶ 66–69). <u>See also</u> Pl.'s Opp'n to Def.'s Mot. Summ. J. 7 (ECF No. 62) ("The UPC position, however, was open in January of 2015."). For her contention that there was an open position in January 2015, however, paragraph 69 of her Statement of Material Facts refers to her deposition. There she testified that her basis for believing there was an open position in January 2015 was "word of mouth," not an actual Wal-Mart posting she had seen. Benson Dep. Tr. 189:2–191:13 (ECF No. 49). That is insufficient evidence to show that the position was actually open in January 2015. Therefore, I proceed to the later dates.

a dispute for the fact-finder. As to both (4) and the legitimate non-discriminatory reason for the failure to hire, Wal-Mart says that the reason Benson was not hired in September for the second and open UPC Office position is that it decided to hire no one and eliminated the second position altogether in the Windham store for legitimate business reasons. Def.'s Mot. Summ. J. 17 (ECF No. 52); Def.'s SMF ¶ 90. Benson has presented no contrary evidence to show that Wal-Mart did hire someone else for the second position or that the second position continues to exist. She has also advanced no evidence of pretext in the September decision.

However, the sole remaining UPC Office position did open in March of 2016, when the previous incumbent left and Wal-Mart hired a different person.[16] This was not the subject of a discrimination claim in Benson's Amended Complaint, she has not met the <u>Clifford v. Barnhart</u> standards to advance it now for the first time, and, while she summarily mentions it in her legal memorandum, Pl.'s Opp'n to Def.'s Mot. Summ. J. 8–9, 13 (ECF No. 62), she has not developed it. Even if I interpret her testimony to mean that she previously altered her career preferences on the Wal-Mart computer website in a manner that would include this unforeseen UPC Office position and thereby "applied" for it and was denied, Benson has presented no evidence that Wal-Mart "hired

---

[16] Pl.'s SMF ¶ 92 (Jean Bennett, the new UPC employee, "had been in the position about two or three months as of July 2016"); Def.'s RSMF ¶ 92 ("On or about March 14, 2016, after Ms. Blackmon left, the 'UPC position' became open and available. At that time, however, Plaintiff was on a leave of absence from Wal-Mart. On or about March 19, 2016, Jean Bennett was placed in the 'UPC position.' Prior to Ms. Bennett, Kathy Blackmon had filled the 'UPC position' for at least six years.").

another individual with similar qualifications" as <u>Clifford</u> requires. 449 F.3d at 281. The store manager's testimony is uncontradicted that if someone falls "within the applicant pool," Wal-Mart "pick[s] the best three applicants in that pool, and then you go from there."[17] Moody Dep. Tr. 46:8–11. Moreover, Wal-Mart has advanced a legitimate nondiscriminatory reason for its failure to hire Benson in that position in March 2016: that, at the time, Benson was on a leave of absence, no longer being able to perform her duties in the TAD position of people greeter.[18] Finally, Benson has failed to provide any evidence of pretext in what occurred in March 2016. On the summary judgment record, therefore, Benson cannot succeed on her claim that Wal-Mart's failure to hire her in a UPC position amounted to disability discrimination.

I conclude that Wal-Mart is entitled to summary judgment on both Counts. I need not address the dispute over whether punitive damages would be available if either claim survived.

**SO ORDERED.**

**DATED THIS 23RD DAY OF JUNE, 2017**

/S/D. BROCK HORNBY

**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[17] The store manager did not know whether Benson was in the applicant pool, Moody Dep. Tr. 46:8–11, and Benson has presented no evidence that she was, except for the computer system reference. But for purposes of the summary judgment motion, I treat the record as if she was in the pool. Nevertheless she has presented no evidence that the person hired had similar qualifications or that Wal-Mart's reason for failing hire Benson was pretextual.

[18] <u>See</u> <u>supra</u> note 16; <u>see also</u> <u>supra</u> 4 (referring to Benson's deposition testimony that she became unable to perform the people-greeter job and went out again on leave of absence, Benson Dep. Tr. 155:1–15 (ECF No. 49)).